# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT L. JOHNSON, | ) | CASE NO. 5:17-cv-0548 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | |
| PLASTEK INDUSTRIES, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

Before the Court are motions to dismiss filed by defendant Plastek Industries (herein, "Plastek") (Doc. Nos. 10&11 [collectively, "Plastek Mot."]), and defendants Joseph Prischak, Nar Handa, and Alex Szekely (herein, collectively, "individual defendants" or, individually, "Prischak," "Handa," and "Szekely") (Doc. Nos. 12&13 [collectively, "Ind. Defs. Mot."]). These motions are supported by a joint appendix, as supplemented. (Doc. Nos. 17, 26 ["Joint Appx."].)[1] Plaintiff Robert L. Johnson ("Johnson") is representing himself. He has filed a document styled "Plaintiff's Motion to Strike (Doc. No. 20 ["Pl. Opp'n 1"]), which the Court has construed as an opposition brief with respect to both motions to dismiss. In addition, Johnson filed a separate brief in opposition to Plastek's motion. (Doc. No. 32 ["Pl. Opp'n 2"].) Plastek filed two reply briefs (Doc. Nos. 24 and 36 [respectively, "Plastek Reply 1" and "Plastek Reply 2"]), as did the

---

[1] All documents in the joint appendix are docket entries and certain filings of record in this action and in an earlier action before another judge of this court, as well as other public records. Plaintiff's complaint also contains several exhibits relating to allegations in the complaint. In ruling on a motion to dismiss under Fed. R. Civ. P. 12, a court "may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).) All of the documents presented to the Court meet this standard and may be considered.

individual defendants (Doc. Nos. 25 and 37 [respectively, "Ind. Defs. Reply 1" and "Ind. Defs. Reply 2"]). On October 4, 2017, the Court issued an order (Doc. No. 34) prohibiting further filing until the motions to dismiss are resolved. On the same day, Johnson filed a document styled "Contemporaneous Motion to strike motion to dismiss," which has been construed as another opposition brief. (Doc. No. 35 ["Pl. Opp'n 3"].)[2] For the reasons set forth herein, both motions to dismiss are **granted**.

## I. JOHNSON'S COMPLAINT

On March 16, 2017, Johnson filed his complaint (Doc. No. 1, Complaint ["Compl."]) against Plastek and the individual defendants, setting forth common law claims of (1) breach of contract, (2) fraudulent non-disclosure, (3) unjust enrichment, (4) fraudulent concealment, and (5) spoliation of evidence. Jurisdiction is based on diversity of citizenship.

Johnson alleges that he is an inventor who, on April 22, 1993, introduced to Plastek,[3] a manufacturer of containers (including deodorant dispensers), his original concept for a toothpaste dispenser consisting of a "cylindrical product tube concealed inside of a housing fitting type transparent assembly[.]" (Compl. ¶¶ 3, 10-11; Ex. A.)[4] He alleges that he "conceived that [his] prototype of a toothpaste dispenser could be used for a deodorant dispenser." (*Id.* ¶ 12.)

---

[2] It is apparent that the order prohibiting further filing had not yet reached Johnson. He has since complied with the Court's order not to file further documents.

[3] Throughout his complaint, Johnson refers to all of the defendants, collectively, as "Defendants Plastek." (Compl. ¶ 9.) When quoting from the complaint, the Court will do the same.

[4] At the time, Johnson was still going by his birth name of "Robin [or Robbin] Lee Johnson." Defendants have argued that the plaintiff herein has no standing because he is not "Robin." However, Johnson has shown that he formally changed his name. (*See* Pl. Opp'n 3 at 868, citing Case No. 2014 CN 00219, Summit County Probate Court.) The Court's review of that probate court's records webpage revealed a Judgment Order in *In the Matter of Changing the Name of: Robin Lee Johnson to Robert Lee Johnson II*, Case No. 2014 CN 00219, dated November 20, 2014, which verifies the name change. This Court "may take judicial notice of proceedings in other courts of record[,]" *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999), and, therefore, need not address any argument relating to standing.

As a result of this meeting, Johnson and Plastek "entered into an agreement [in] which Defendants Plastek made Plaintiff an attractive offer involved [sic] three phases, two of which would entitle Plaintiff to receive compensation in exchange for allowing Defendants Plastek to be [Plaintiff's] exclusive marketing arm . . . ." (*Id.* ¶ 19; Ex. B.) Plaintiff allegedly traveled to Connecticut on May 11, 1993, to present his invention to Plastek's design firm associate. (*Id.* ¶¶ 18, 20.) He also made a number of business trips to Ohio with Plastek employees to determine marketing feasibility with a customer, Proctor & Gamble, to whom he also gave a presentation on his prototype invention, and allegedly demonstrated how it could be used for a deodorant dispenser. (*Id.* ¶¶ 21-24.) Johnson also "independently held a meeting with Helene Curtis" in Chicago, Illinois on December 7, 1993. (*Id.* ¶ 31.)

Johnson alleges that, on July 27, 1995, he and Plastek entered into a Confidential / Non-Disclosure Agreement. (*Id.* ¶ 37; Ex. D.) The agreement permitted Plastek "to evaluate the usefulness to itself of [Johnson's] invention[,]" identified in the agreement as "Tactile Feed Back Liquid Dispensing Closure[.]" (Compl. Ex. D at 42[5].) Johnson also alleges that, on July 27, 1995, he made references to his Patent No. 5,215,229 ("the '229 Patent") and underlined certain subject matter contained in that patent. (Compl. ¶ 38; Ex. A.)

Johnson asserts that Plastek set up a September 13, 1995 meeting with him, wherein defendant Handa showed Johnson "a prototype of a deodorant dispenser which did not turn and therefore was not useable." (Compl. ¶ 41.) "Plaintiff explained the theoretical operation of his invention may have a center ratchet teeth gear dispensing actuation assembly including two bottles sharing a common thread structure and relate to a single closure to maintain the association of the

---

[5] All page number references are to the page identification number generated by the Court's electronic docketing system.

3

parts." (*Id.* ¶ 42.) Defendant Szekely was also at this meeting. (*Id.* ¶ 43.) Plaintiff claims that, on September 13, 1995, he "illustrated various deodorant dispenser sketches . . . derived from . . . [his] toothpaste dispenser . . . ." (*Id.* ¶ 44.)

Johnson alleges that Plastek eventually applied for a patent on a deodorant dispenser, but never disclosed that fact to him. (*Id.* ¶¶ 48-49.) On March 21, 2000, Szekely was awarded Patent No. 6,039,483 ("the '483 Patent") "for a deodorant dispenser comprising a cylindrical product tube concealed inside of an outer oval housing." (*Id.* ¶ 50; Ex. G.)

Johnson also applied for a patent and, on April 3, 2001, he was awarded Patent No. 6,210,061 ("the '061 Patent") "for a deodorant dispenser comprising a cylindrical product tube concealed inside of an outer oval housing." (*Id.* ¶ 52; Ex. H.)

On February 18, 2002, Johnson's patent attorney sent a letter to Plastek demanding that Johnson be added as a co-inventor on the '483 Patent. (*Id.* ¶ 53; Ex. I at 97-99.) By letter dated February 27, 2002, Plastek advised that "Mr. Johnson [had] made no inventive contribution" to the '483 Patent; the letter suggested that Johnson "present an explanation as to what subject matter from the claims of the '483 patent Mr. Johnson claims he invented[.]" (*Id.* Ex. J at 103.) By letter dated March 27, 2002, Johnson's attorney supplied the requested explanation. (*Id.* Ex. I at 100-102.) By letter dated April 30, 2002, Plastek rejected the explanation and the demand by Johnson to be named co-inventor on the '483 Patent. (*Id.* ¶ 54 and Ex. J at 105-08.) Johnson claims that, on July 13, 2014, he "discovered a deodorant dispenser labeled by Unilever, yet the dispenser is void of an identifiable patent number which could lead to the manufacturer . . . ." (*Id.* ¶ 55.) Johnson alleges that he "sought for years to determine what improper use Defendants Plastek had made of the time, effort and technology [he] contributed to it[,]" but his discovery was delayed by Plastek's "acquisitions and mergers[.]" (*Id.* ¶ 56.)

4

Based on these facts, Johnson sets forth five (5) counts.

In count one, Johnson alleges that Plastek breached the parties' three-phase agreement and, without notifying him, applied for a patent, while taking control of his invention, in order "to obtain a patent without naming Plaintiff as one of the inventors if not the sole inventor" of the '483 Patent. (*Id.* ¶ 58; Ex. G.) Plastek then contacted Helene Curtis, allegedly holding itself out as Johnson's broker for his invention, but failed to disclose this contact to plaintiff. (*Id.* ¶¶ 64-66.)

In count two, Johnson asserts a claim of fraudulent non-disclosure. He alleges that Plastek applied for a provisional patent on the subject matter that plaintiff disclosed under the parties' confidentiality agreement, but named defendant Szekely as the sole inventor, thereby preventing Johnson from assigning or selling his owned patented invention to Helene Curtis. (*Id.* ¶¶ 68-70, 72.) He alleges that Plastek "deceptively showed no interest in the use of Plaintiff's disclosure" of his invention, "while using [his] initiative[,] skills and talent in order to re-engineer [his] toothpaste dispenser into a deodorant dispenser for Helene Curtis." (*Id*. ¶¶ 75-76.) Despite these allegations, Johnson also claims that "the deodorant dispenser manufacturer for Helene Curtis . . . at the present time remains a mystery to the Plaintiff without intervening this court." (*Id.* ¶ 78.) In sum, Johnson alleges in count two that Plastek "withheld information about applying for a patent and never told Plaintiff[,]" and also "failed to disclose information to Plaintiff about . . . Plastek's involvement with Plaintiff's customer Helen[e] Curtis and that . . . Plastek signed Plaintiff's confidentiality agreement concerning the development of the deodorant dispenser derived from Plaintiff's toothpaste dispenser patent No[.] 5,215,229." (*Id.* ¶¶ 81, 82.) Plaintiff acknowledges that, "[i]n 2002 [his] patent attorney sent dispute letters to Defendants Plastek . . . yet it has failed and refused to provide Plaintiff with compensation as contemplated by the agreement." (*Id.* ¶ 83.) Johnson alleges that "Plastek['s] fraudulent non-disclosure" and its "malicious unwillingness to add

5

Plaintiff as co-inventor[,]" has caused damage to plaintiff. (*Id.* ¶¶ 85, 87.) Further, Plastek has "profited from the sales and licensing of [the '483 Patent] for almost two decades without prior express written consent from plaintiff." (*Id.* ¶ 90.) The fraudulent non-disclosure has "deprived the Plaintiff [of] opportunities and prestige [he] would have enjoyed had [he] been credited with the invention, and harmed Plaintiff financially, personally and professionally." (*Id.* ¶ 92.) Finally, Johnson asserts that it would be "unreasonable . . . to bar rights of action because of the lapse of time prior to their accrual, when they could not have been exercised." (*Id.* ¶ 94.)

In count three, plaintiff asserts a claim for unjust enrichment based on these same facts: not naming him as co-inventor, preventing him from working with Helene Curtis, using his invention for Plastek's own benefit, and profiting from plaintiff's invention without compensating him. (*Id.* ¶¶ 99-103.)

In count four, Johnson purportedly asserts a claim for fraudulent concealment. He declares that Plastek should be precluded from asserting a "laches defense" and the Court should "find that the tolling rule applies . . . [due to] delay of discovery." (*Id.* ¶¶ 105-06.) Johnson alleges a laundry list of allegedly "vindictive behaviors" by Plastek (*Id.* ¶ 111), all aimed at "delay[ing] Plaintiff from being able to bring [his] cause of action[.]" (*Id.* ¶ 115.) Johnson alleges that "[i]t is unfair to allow [defendants] to benefit from the letter agreement, yet Plaintiff is potentially time barred by Defendants Plastek's fraudulent concealment . . . ." (*Id.* ¶ 120.) Finally, Johnson alleges that "[i]t is unfair to Plaintiff for Defendants Plastek to go on the long stretch for two decades in order to complete all three phases of the letter agreement . . . without compensating Plaintiff." (*Id.* ¶ 125.)

Finally, in count five, Johnson asserts a claim for spoliation of evidence. In this claim, he explicitly acknowledges that, in 2002, his patent attorney "formally notified [Plastek] . . . [that] they were infringing on Plaintiff's patent rights." (*See id.* ¶ 129.) He asserts that defendants

6

"suppressed evidence which Plaintiff referenced in Plaintiff's dispute letter[]" (*Id.* ¶ 130), and "initiated litigation in a deceptive way to demand Plaintiff turn over his evidence against Defendants Plastek in order to suppress the evidence which was discovered in 2002 after the Judge dismissed Plaintiff's lawsuit for lack of evidence against Defendants Plastek in 1999." (*Id.* ¶ 132.)

Johnson's allegations about dismissal of his previous lawsuit -- which set forth many, if not all, of the same allegations as this case -- referred to the case of *Robbin L. Johnson v. Plastek Group, et al.*, Case No. 5:97-cv-687 (N.D. Ohio), presided over by Judge Dan Aaron Polster, wherein Johnson was represented by counsel. The docket of that case reflects that it was dismissed, with prejudice, on August 4, 1999, upon stipulation and order, when the case settled following a settlement conference with all parties and counsel. The dismissal was not due to lack of evidence.

## II. DISCUSSION

### A. Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule 8

does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "The court need not, however, accept unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

**B.    Analysis**

Plastek's Rule 12(b)(6) motion argues that Johnson's claims are barred (1) by the applicable statutes of limitations; (2) by accord and satisfaction and claim preclusion based on the settlement and dismissal of his previous lawsuit; (3) by the existence of admitted contracts, which preclude tort claims arising out of the same facts; and (4) by failure to state actionable claims upon which relief can be granted. The motion of the individual defendants adopts these arguments, and makes the additional arguments that there is no personal jurisdiction over any of them, and that none of them is a party to the agreements that were allegedly breached.[6]

---

[6] *See also* n. 4, *supra* for all defendants' additional argument on standing that the Court need not address.

Although defendants raise a number of meritorious arguments, only one, relating to the statute of limitations, will be addressed in detail,[7] because it is completely case dispositive.[8]

"[A] statute of limitations defense may form the basis of a Rule 12(b)(6) motion 'when it is apparent from the face of the complaint that the time limit for bringing the claim has passed.'" *Lawson v. Lynch*, No. 4:15-cv-2140, 2017 WL 979115, at * 4 (N.D. Ohio Mar. 14, 2017) (quoting *Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992)).

As aptly argued by Plastek, and adopted by the individual defendants, each count of the complaint is time-barred based on Johnson's own allegations and supporting documents:

- First count - Breach of Contract: The agreements at issue were signed in 1993 and 1995, and all of Johnson's allegations of breach occurred either in the 1990s or by at least 2002, as shown by the demand letter Johnson's lawyer sent to Plastek on February 18, 2002. (Joint Appx., Tab 2/Doc. 1, Complaint, ¶ 58-66; Tab 3/Doc. 1-5; Tab 4/Doc. 1-7; Tab 7/Doc. 1-12).

- Second Count - "Fraudulent Non-disclosure": This claim stems from the same time frame (Joint Appx., Tab 2/Doc. 1 - Complaint ¶ 68-96), and in alleging the claim, Johnson specifically states that in 2002, his attorney sent a demand letter to Plastek making the same allegations that Johnson makes in this Count. (Joint Appx., Tab 2/Doc. 1 - Complaint, ¶ 83).

- Third Count - Unjust Enrichment: This claim is also based on the same operative facts stemming from the parties' relationship in the 1990s and from the alleged failure to name Johnson as a "co-inventor" on a patent,

---

[7] Defendants' second argument, relating to accord and satisfaction and claim preclusion, also has considerable merit. On March 17, 1997, plaintiff, under his then-current name "Robbin L. Johnson" and represented by counsel, filed a complaint against Plastek Group and Nar Handa, which was assigned to another judge of this court. (*See* Case No. 5:97-cv-0687, Joint Appx. Tab 14.) Therein, he raised claims of breach of contract, unjust enrichment/quantum meruit, material misrepresentation, promissory estoppel, and tortious interference with business relationships. The claims were based upon the same April 28, 1993 letter that underlies the current lawsuit, and the same allegations regarding Johnson's disclosure of his invention and Plastek's alleged misappropriation of that invention. Defendants argue that the settlement reached in that case, and its dismissal with prejudice, coupled with a payment of $10,000 to Johnson, precludes the instant case. (Plastek Mot. at 169-70.) In opposition, Johnson argues that there was no settlement for any new or newly-discovered claims. (Pl. Opp'n 1 at 749.) Even if Johnson is correct, as explained herein, any new claims are time-barred.

[8] The argument of the individual defendants that the Court lacks personal jurisdiction over any of them is well-taken. The individual defendants are each entitled to dismissal on that basis alone. That said, even if it were determined that there *is* personal jurisdiction over them, the individual defendants would still be entitled to dismissal of the claims as otherwise set forth in this opinion.

which again was the subject of the 2002 letter sent by Johnson's attorney. (Joint Appx., Tab 2/Doc. 1 - Complaint ¶ 98-103).

- Fourth Count - "Fraudulent Concealment": This "claim" is more of an argument to toll the statute of limitations than an actual cause of action, . . . but if it is a separate fraud claim, it too alleges facts very similar [to] those underlying Counts I-III, all of which were known by Johnson in early 2002 at the latest. (Joint Appx., Tab 2/Doc. 1 Complaint ¶ 105-128; Tax [sic] 7/Doc. 1-12).

- Fifth Count - "Spoliation of Evidence": Johnson admits that he "discovered in 2002" Plastek's alleged efforts to "suppress the evidence" and that the facts underlying this claim were addressed in [the] 2002 "dispute letter" from his attorney. (Joint Appx., Tab 2/Doc. 1 - Complaint ¶ 130, 132).

(Plastek Mot. at 176-77; *see also* Ind. Defs. Mot. at 217.)

A federal court in Ohio, sitting in diversity, applies Ohio's statute of limitations to determine whether a claim is time-barred.[9] *Arandell Corp. v. Am. Elec. Power Co., Inc.*, No. 2:09-CV-231, 2010 WL 3667004, at * 4 (S.D. Ohio Sept. 15, 2010) (citing cases). The "discovery rule," upon which Johnson relies, "generally provides that a cause of action accrues for purposes of the governing statute of limitations at the time when the plaintiff discovers or, in the exercise of reasonable care, should have discovered the complained of injury." *Investors REIT One v. Jacobs*, 546 N.E.2d 206, 209 (Ohio 1989) (citations omitted).

Under Ohio law, the statute of limitations for breach of a written contract is either fifteen (15) years or eight (8) years, depending upon when the claim accrued. Ohio Rev. Code § 2305.06;

---

[9] Defendants argue that Ohio's "borrowing statute" applies to make applicable the laws of Pennsylvania, where Johnson's claims likely accrued. But the borrowing statute, Ohio Rev. Code § 2305.03, became effective on April 7, 2005. It does not apply retroactively to claims, such as here, that accrued in 2002, prior to the effective date of the statute. *See Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 837-38 (N.D. Ohio 2010); *Executone of Columbus, Inc. v. Inter-Tel, Inc.*, 665 F. Supp. 2d 899, 918-19 (S.D. Ohio 2009). That said, Johnson's claims are time-barred under both Ohio and Pennsylvania law.

*Transp. Ins. Co. v. Busy Beaver Bldg. Ctrs., Inc.*, 969 F. Supp. 2d 875, 885 n.17 (S.D. Ohio 2013).[10] For breach of an implied contract and for unjust enrichment, the statute of limitations is six (6) years. Ohio Rev. Code § 2305.07; *Mitchell v. Brownie's Indep. Transmission*, No. 27563, 2018 WL 300460, at * 4 (Ohio Ct. App. Jan. 5, 2018) (implied contract); *Desai v. Franklin*, 895 N.E.2d 875, 882 (Ohio Ct. App. 2008) (unjust enrichment). For a fraud claim, the statute of limitations is four (4) years. Ohio Rev. Code § 2305.09; *Riddick v. Taylor*, No. 105603, 2018 WL 460904, at * 2 (Ohio Ct. App. Jan. 18, 2018) (fraud).[11] *See also*, 42 Pa. C.S. §§ 5524, 5525.

By Johnson's own admission, he discovered all of the facts underlying the claims in this lawsuit by February 18, 2002, at the latest, when his intellectual property lawyer sent a letter to Plastek. (*See* Compl. Ex. I.) Johnson has supplied no reason why this accrual date should be tolled.

### III. CONCLUSION

For the reasons set forth herein, the motion to dismiss of defendant Plastek Industries (Doc. No. 10) is **granted** and the motion to dismiss of defendants Joseph Prischak, Nar Handa, and Alex Szekely (Doc. No. 12) is also **granted**. This case will be closed by separate entry.

**IT IS SO ORDERED**.

Dated: March 27, 2018

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**

---

[10] Prior to June 26, 2012, Ohio's statute of limitations for breach of a written contract was fifteen (15) years. Ohio Senate Bill 224 reduced that statute of limitations to eight (8) years. In this case, the limitations period for Johnson's breach of contract claim is likely fifteen (15) years.

[11] Johnson has also asserted a spoliation of evidence claim. However, because all of his other claims are barred by their respective statute of limitations, even if he proves destruction of evidence, the spoliation claim would fail as a matter of law because, having no timely underlying claim(s), Johnson would be unable to show any prejudice from that destruction. *Jeffrey Mining Prod., L.P. v. Left Fork Mining Co.*, 758 N.E.2d 1173, 1181 (Ohio Ct. App. 2001) (citing *Smith v. Howard Johnson Co., Inc.*, 615 N.E.2d 1037 (Ohio Ct. App. 1993) (describing elements of a spoliation claim)).